**FILED**

2011 MAY 2 7   **DB**

**U.S. DISTRICT COURT**
**MIDDLE DISTRICT OF TN.**

IN THE UNITED STATES DISTRICT COURT FOR MIDDLE, TENNESSEE
AT NASHVILLE

Dr. Samantha G. Williams-Iwu,  )
      Plaintiff,  )
  )
  )
vs.  )
  )  Case No.: _____
  )
Wal-Mart Stores, Inc., Caroline Pegram,  )  <u>JURY DEMANDED</u>
(individually & officially), Stephen  )
Dew (individually & officially),  )
 and Janet Gerges(Individual & Officially)  )
  )
  )
      Defendants.  )

## COMPLAINT

      Plaintiff, Dr. Samantha G. Williams-Iwu (hereinafter "Dr. Sam"), by and through her counsels, Wade Law Firm and John Ben Iwu, PC., complaining of the Defendants, Wal-Mart Stores, Inc., (hereinafter "Wal-Mart"), Caroline Pegram (hereinafter "Ms. Pegram"), Stephen Dew (hereinafter "Dr. Dew"), Kellie Boner (hereinafter "Boner"), and Janet Gerges (hereinafter "Ms. Gerges") and would show the court as follows:

### NATURE OF THE CASE

1. This action is brought to remedy unlawful discriminatory practices on the basis of race, retaliation and hostile work environment under Title VII; 42 U.S.C 1981 of the Civil Rights Act of 1866 ("section 1981"); State of Tennessee Human Rights Act, T.C.A. § 4-21-401. Further, this action was brought because the plaintiff was paid less than her white counterparts/managers in violation of Equal Pay Act of 1963, Chapter 8 of Title 29 U.S.C §206(d) (Amended 2010).

## JURISDICTION AND VENUE

2    This court has jurisdiction pursuant to 42 U.S.C. §2000e-5(f) (3), and 28
U.S.C §1331 and 1343. This court has supplementary jurisdiction over Dr.
Sam's State of Tennessee Human Rights and State of Tennessee Civil Rights
Claims pursuant to 28 U.S.C §1367.

3.    Compensatory and Punitive Damages, attorney's fees, and other
appropriate legal and equitable relief are sought pursuant to 42 U.S.C
§2000e-5(g) and (k), 42 U.S.C §1981A, 42 U.S.C. §1988 and 28 U.S.C. §2201.

4.    All of the unlawful acts, omissions, occurrences, practices complained of
herein  occurred within this judicial district, and venue is proper in this
District  pursuant to 42 U.S.C. §2000e-5(f)(3) and 29 U.S.C. §1391(b).

## DETERMINATION BY THE U.S. EQUAL
## EMPLOYMENT OPPORTUNITY COMMISSION

5.    The United States Equal Employment Commission, based on its
     investigation, determined that it was unable to complete its administrative
     proceeding within 180 days from the filing of the charge; therefore, a right
     to sue letter was issued upon request. No finding is made as to any of the
     issues raised by the charge. Attached please find the determination of the
     United States Equal Employment Opportunity Commission as Exhibit "A".
     The United States Equal Employment Opportunity Commission ("EEOC')
     issued a Notice of Right to Sue Letter on February 28, 2011. Dr. Sam
     received such notice on March 2, 2011. Dr. Sam  timely filed this lawsuit
     within 90 days of receipt of the EEOC notice.

## PARTIES

6    Plaintiff, Dr. Sam, is a natural born United States citizen and resident of
     Brentwood, Davidson County, Tennessee and was the only female African
     American pharmacy manager in her district and employee of the
     defendant, Wal-Mart.

7  Plaintiff, Dr. Sam duties include but not limited to supervising and evaluating interns, technicians, staff pharmacists, students, enforcing policies and procedures and overseeing pharmacy operations, etc.

8  Defendant, Wal-Mart, Inc., upon information and belief, is a foreign (Delaware) corporation organized and existing pursuant to the laws of Delaware with its principal place of business in Bentonville, Ark, and engages in business and business activities within the State of Tennessee, and is subject to the laws and statutes of the State of Tennessee, and thereby is subject to the jurisdiction of this court.

9  At all relevant times, individually and officially, Ms. Carolyn Pegram, Dr. Stephen Dew, Ms. Kellie Boner, and Ms. Janet Gerges are agents and employees of defendant, Wal-Mart, and were acting in that capacity when all relevant acts and omissions, which are the basis of this lawsuit, occurred.

10  Service of process against the defendant, Wal-Mart, can be accomplished through its corporate headquarters by serving its registered agent The Corporation Company at: 124 West Capitol Ave., Suite 1900, Little Rock, Arkansas 72716-8611, while service of process against the other defendants can be accomplished by serving them at Wal-Mart local office in Nashville at 1220 Gallatin Ave., Nashville, TN 37206.

11  The agents and employees of Wal-Mart referred to in this Complaint authorized, harassed, confronted, humiliated, mistreated, threatened, enabled, and encouraged a hostile work environment, racially discriminated and wrongfully terminated Dr. Sam unlawfully, and at all relevant times acted on behalf of their employer, Wal-Mart, and in their individual and official capacities.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

12  Dr. Sam is a thirty-eight year old African-American female, with a doctorate Degree in pharmacy, who had worked approximately two years

as a pharmacy manager for the defendant prior to her wrongful termination due to racially tensed and hostile work environment.

13  On or about October 2008, Dr. Sam was hired as a staff pharmacist for the defendant; she applied for a managerial position that opened up (the only applicant who applied) and got the job on April 2009 as the pharmacy manager of store (5107). At the time, store 5107 was one of the failing stores in the district and was in real bad shape and in need of transformation. It was so bad that the managerial position was literally open for one or more years.

14  Dr. Sam took over this store (5107) and transformed it into a prosperous store; because of the superb job done, her direct supervisor tapped her to manage the other failing store hereinafter referred as store 3306. Dr. Sam took over managing this store on February 1, 2010. She was instructed to duplicate or turn around this store the way she did for store (5107).

15  As a condition precedent to taking over this new store 3306, she demanded certain equipments lacking in that store that other stores managed by white managers had; her direct supervisor agreed on those terms.

16  At or near the time Dr. Sam took over store 3306, there was realignment of districts, which resulted in Dr. Sam,'s direct supervisor and boss being replaced by Ms. Pegram.   Ms. Pegram had previously been the district manager of store 3306 and was now coming back for the second time.

17  Upon arrival at store 3306 on February 1, 2010 for her new managerial assignment, Dr Sam discovered that Pharmacy Board Procedures were not followed at all in this store, and that Wal-Mart was selling expired drugs to this predominantly minority and poor area. In fact, some of the drugs were two (2) or more years old expired.

18 Dr. Sam knew now that she had to remedy the situation because of the urgent need for health risks for her patients, but not without asking her supervisor Ms. Pegram about it.

19 When Dr. Sam asked Ms. Pegram about it, she acknowledged the seriousness of the problem and specifically told her and I quote, "My job is on the line." Dr. Sam responded by asking her why this problem does not exit in predominantly white areas and why is it all about saving her job. Ms. Pegram was not too happy about Dr. Sam's response and she told her, "Wal-Mart is here to make money and does not care so much about the neighborhood and people in it". Dr. Sam responded by saying that, "it is morally wrong and reprehensible to sell these expired drugs to these people without any remorse for it. Then, her supervisor said, "Well, that comment won't sit well with the corporate management and that you won't go up in corporate hierarchy if you wanna play mother Theresa."

20 After the exchange, Dr. Sam proceeded to work and Ms. Pegram left and perhaps alerted the upper management what Dr. Sam had said, and efforts were borne immediately on how to undermine, retaliate, and force Dr. Sam to quit. First, Ms. Pegram refused to honor, provide, or make available all the equipments she had been promised before leaving her old store, even though other white managers had them in their stores.

21 Dr. Sam did not receive adequate help that was provided to other white pharmacy manager. For example, Stores that are managed by white managers receive all the necessary help for smooth operation of their stores, including having certified pharmacy technicians. Dr. Sam, despite her repeated requests to get a certified technician, was denied that request even though white manages were not. Denial of adequate technicians, specifically a certified one, was simply designed to retaliate, punish, and over work Dr. Sam into quitting her job. Ms. Pegram once told Dr. Sam

that, "they would never find a certified technician who would want to work in this neighborhood."

22 Dr. Sam made repeated requests to be transferred or the need to transfer out some of the people that cause problems in the pharmacy, it was always denied. Ironically, other white pharmacists or pharmacy managers are transferred out simply on verbal request, all in an effort to punish her.

23 Dr. Sam's superiors encourage her subordinates to confront, undermine, and create chaos in the pharmacy and, in some cases, make frivolous allegations not worthy of entertaining. Dr. Sam was denied support for coaching or writing up of her subordinates, as her white counterparts enjoyed.

24 Dr. Sam was a victim of frivolous investigations designed to distract and create chaos in her pharmacy as a means of punishing and retaliating against her. In some cases, frivolous investigations were launched, and Dr. Sam was not asked her side of the story, evidencing bias. Ms. Pegram asked Dr. Sam her version of the story, for example, when Ms. Gerges (a white pharmacist) walked out of the store, quits in disgust in the middle of her shift, she is not believed while the reverse is the case with white pharmacy managers.

25 Due to lack of support, racism, and hostile work environment, Dr. Sam had a severe stress attack on the job in July 2010, which resulted in her being hospitalized. When the ambulance arrived and while Dr. Sam is being carried away, Ms. Alice Faye Bowers whispered in her ear, "This is how they want to see you, defeated."

26 Dr. Sam was denied sick leave, which was approved for white pharmacists. For example, Ms. Pegram insisted on seeing Dr. Sam's diagnosis before she could turn in her leave papers, even though it was not written

anywhere in the pharmacy or Wal-Mart policy. Ms. Pegram's role was just to turn it in, but she said that she would not turn it in until she sees her diagnosis. Until this day, Dr. Sam did not receive her one week of sick leave and paid over $1,000.00 in out of pockets medical expenses.

27 On numerous occasions, Dr. Sam was forced to work overtime without overtime pay to assist Ms. Gerges with keeping up on her shifts. In fact, HR agent, Cornelius Boone, stated to Dr. Sam one time when she raised the issue that "staying 30 minutes to one hour is not considered an overtime."

28 In line with the upper management concerted effort to force Dr. Sam to leave, they encouraged her subordinates to confront and disrespect her, even when there were other people around such as other staff members and customers. On March 29, 2010, a white pharmacist, Janice Gerges, who worked under her, confronted her in the middle of her shift wanting to complain about her schedule and her duties as a staff pharmacist. Dr Sam told her to wait until their 30 min lunch time to talk in private, since it was a busy Monday and was doing managerial functions as well as reorganizing the pharmacy.

29 Instead of following Dr. Sam's instruction, Ms. Gerges continuously tried to escalate a fight, abandoned her job, and walked out of the pharmacy, quitting her job in disgust. Ms. Gerges even said to Dr. Sam that she needed to find another time day and time to fix the store and to get her management work done, a clear insubordination.

30 On several occasions, Wal-Mart did not provide cover, as was done to white pharmacy managers. During the entire time, Ms. Gerges abandoned her job; Dr. Sam had to work too many hours because adequate cover was not provided. Ms. Pegram told her that, "it is impossible to find some people that want to work in this store."

31  To further advance their racism and discrimination against Dr. Sam, the upper management of Ms. Pegram and Wal-Mart decided to bring Janet Gerges back on a condition to get Dr. Sam. They (upper management) decided to put right back to work with Dr. Sam, her superior she never respected.   Suffice to say that when the decision was made about bringing her back (Ms. Gerges), Dr. Sam was neither informed nor consulted. Job abandonment and walking out of job; especially in the middle of one's shift is a gross misconduct, a violation of employer's policy and carries automatic termination (although she announced her quitting before leaving).

32  Of course, once Ms. Gerges returned back, she was now emboldened since the top management used her as their "hatchet woman" against Dr. Sam. She now challenged Dr. Sam in any little way she could find.

33  Dr. Sam never really had a real partner in her store enjoyed by other white store managers.  Dr. Sam had to always work with pharmacists she had to carry along with or the so-called "rejects" in the district that no one wanted. Dr. Sam made numerous requests for higher management (Kevin Corkern, Gary Cantrell, Carolyn Pegram, and Dr. Stephen Dew) to remove Janet Gerges and to hire a strong, competent pharmacist to balance the weight of the workload enjoyed by white pharmacy managers. Dr. Sam even  recommended Dr. Simon Idiore who they hired, but never brought along to work with Dr. Sam.

34  Once Dr. Idiore was hired, the upper management, in an effort to punish her (Dr. Sam), did not bring him (Simon) to be her store partner, nor receive compensation for recommending and hiring of a new pharmacist, Simon. Instead, Dr. Idiore was floated all around Nashville and surrounding towns. Of course, once Dr. Sam was terminated, Dr. Dew brought him to manage the store.

35 Strangely enough, after Mr. Idiore arrived at store 3306 to manage it, Ms. Bowers introduced herself to him bragging, "I am one of those who helped get rid of Dr. Sam." Ms. Bowers, at the time, did not know that Dr. Sam knew Dr. Idiore.

36 Apparently, after lack of performance, many complaints of mistreatment of Dr. Sam, and numerous retaliations, Ms. Pegram was abruptly moved out of Wal-Mart system, but was rewarded with a managerial position with Sam's Club, a company owned by Wal-Mart.

37 When Ms. Pegram was relieved of her duties, Dr. Stephen Dew was brought in to take over her place around August 2010. Upon arrival, Dr. Dew took over from where Caroline had left of in trying to eliminate Dr. Sam. First, he made a huge statement when he visited other stores managed by white people and never showed up on Dr. Sam's store. Dr. Dew promised to visit Dr. Sam's store on September 8, Oct. 11, October 27, and November 9, and never showed up, even though it was the most troubled store.

38 Dr. Sam met Dew finally on Nov 5, 2010, the day Kellie Boner (first time meeting her too this day) attempted to pick a fight with her in the pharmacy stemming from how she approved one of Dr. Sam's employees (Keona Hornbeck) workman's compensation without discussing it with Dr. Sam. Since Ms. Hornbeck had restrictions, Dr. Sam wanted to know her restrictions in a form of paper proof, instead Ms. Boner said, "This is my store," and Dr. Sam reminded her it is her store too.

39 Dr. Sam repeatedly asked for a meeting with her new boss to no avail. Dr. Dew avoided meeting with her and it was all by design. Dr. Dew never even called to introduce himself as her new boss. He had no interest of meeting Dr. Sam because of top management order to ensure that she did

not have their support and smooth operation of her pharmacy. Dr. Sam was isolated!

40 Dr. Dew on numerous occasions called Ms. Gerges (white subordinate) to know about the pharmacy, instead of Dr. Sam, while Dr. Dew inquires about other stores through their white pharmacy managers. The only obvious reason for this treatment is because of Dr. Sam's race. Ms. Gerges has only practiced pharmacy a little over two (2) years, while Dr. Sam has practiced about 12 years. Dr. Dew once called Ms. Gerges and asked her whom she wanted eliminated in the pharmacy and she told him Dr. Sam. Dr. Dew and Ms. Gerges work in concert to eliminate Dr. Sam.

41 On December 17, 2010, in one of their numerous staged confrontations, Dr. Sam sent an email to Dr. Dew giving him a two-week resignation notice, including a request for a full investigation about what had happened to her. Before the notice, Dr. Sam had requested to go home because she was not feeling well, coupled with the unnecessary confrontation by Ms. Boner. Normally, Wal-Mart policy requires that when an employee is sick, reasonable accommodations be made to find such employee coverage. Instead, Dr. Dew started yelling and screaming at Dr. Sam and accused her of faking illness, in complete violation of store policies. Dr. Dew's behavior was reckless, outrageous, and retaliatory, and was made with the intent to force Dr. Sam's out of her position.

42 The upper management made a decision to encourage the new store manager, Kellie Boner, to treat Dr. Sam as one her subordinates. Before Ms. Boner arrived at store 3306 as the store manager, she must have been instructed to escalate the already tensed hostile work environment.

43 Ms. Boner started working on or about November 1, 2011, but Dr. Sam met her for the first time on November 5th. Customarily, once a new store

manager comes to a new place, he/she will come to the pharmacy and introduce him/herself.

44  Ms. Boner never really spoke to Dr. Sam until Dr. Sam sent out an email asking why. Ms. Boner was acting as if she was under some sort of instruction. Ms. Boner told Dr. Sam in the presence of Darell Barbee (assistant manager) that she was not interested in solving problems, but eliminating people. Ms. Boner has lived up to that because, in her five (5) months as a store manager, she has actually fired twenty-six employees (almost all blacks).

45  Ms. Boner in one occasion invaded Dr. Sam's space and flat out said to Dr. Sam, "This is my store and I decide what goes on". In response, Dr. Sam reminded her that this is our store since Dr. Sam runs the pharmacy, and Kellie runs the merchandise store. After this exchange, Dr. Sam attempted to go to her office in order to remedy the situation and ensure that they are on the same page, but Ms. Boner did not show desire for any kind of dialogue. Kellie said to Dr. Sam that she was on a conference call and would get back with her, but she never did.

46  Ms. Boner was running Dr. Sam's the pharmacy by proxy. The store manager and the pharmacy manager have distinct roles based on their unique positions. But Dr. Dew makes decisions based on what Ms. Boner thought. There is no store manager who ever stepped on the pharmacy manager. Dr. Dew calls Kellie to ask about the pharmacy. Kellie Boner started copying emails to Dr. Sam, as she does to her subordinates. Ms. Boner even told Dr. Sam that, "I am your boss and can fire you." Ms. Boner's actions were made in an attempt to annoy and harass Dr. Sam.

47  At one point, Dr. Sam felt that the constant confrontations, along with other interferences from Ms. Boner, made her to send email to Mr. Stephen Dew and Ms. Boner's direct supervisor, Wade Hunt, to define

authority here (Ms. Boner and Dr. Sam). As was expected, Dr. Sam's superiors did not address that email, leaving Dr. Sam to believe that the management has made decision to allow Ms. Boner to run the pharmacy by proxy and without a license. Dr. Sam, practically, felt that she was a manager without portfolio. No white pharmacy manager in the district experienced this mistreatment.

48 Ms. Boner, in one of her numerous interferences, made a decision about approving a pharmacy employee Workman's Compensation without Dr. Sam's knowledge. In one other time, for example, the OTC manager is under direct supervision of the pharmacy manager. Upon Ms. Boner's arrival at Dr. Sam's store, she unilaterally banned the OTC manger (Alice Faye Bowers) from helping or entering the pharmacy without her approval, all designed to embarrass, humiliate, create tension, and pick a fight with Dr. Sam. Again, the white pharmacy managers do not experience this encroachment, all designed to force her to leave her job.

49 On December 17, 2010, Ms. Boner confronted Dr. Sam in her normal staged manner, usually with someone with her (Sabrina or Darell: assistant managers). On this fateful day, the technicians were running late and Dr. Sam was alone in the pharmacy. As she experienced difficulty ringing a gift card, she called one of the cashiers, named Amy, to help her with ringing a gift card.

50 All of a sudden, one of Ms. Boner's numerous spies against Dr. Sam ran in the back and told Ms. Boner about the situation. Ms. Boner was now furious and in her normal confrontational mood, accused Dr. Sam of stealing one of her employees without permission. This minor help did not last more than one (1) minute. Afterwards, Ms. Boner threatened the cashier, Amy, that she can lose her job over this and for helping Dr. Sam.

51 Dr. Sam believed that December 17, 2010 incident would have been a perfect time where the OTC manager (Alice Faye Bowers) would have been very useful. OTC managers play these roles in other stores, while that role was taken away from Dr. Sam's store to escalate tension and to punish her. Dr. Sam tried to deescalate this hostile work environment and racial animosities against her to no avail by her attempts to talk to higher management.

52 Defendant, Wal-Mart, rarely promotes black managers to district manager levels or beyond as Wal-Mart data will reveal. Black pharmacists rarely manage Supercenters and are deprived of those bonuses that flow from it. Dr. Sam was the only female black manager in her district and never enjoyed the same comfort her white counterparts enjoyed. Wal-Mart always ensures that black managers manage predominantly minority area stores. That same goes to sending black pharmacists to predominantly minority neighborhoods.

53 Dr. Sam did not receive comparable pay like other white male pharmacy managers. This was the case even though Dr. Sam was overworked, understaffed, disrespected, humiliated, confronted, and forced to quit her job and later fired. Dr. Sam did not receive any form of bonus for store performance, while her white colleagues did.

54 Upon giving her notice on December 17, 2010, Dr. Sam showed up for work the next day (December 18, 2010) and another pharmacist, Kent Palmer, was already working her shift. Dr. Sam called and asked Dr Dew, her direct supervisor, why he brought in cover and he said, "I thought you will not show up". Anyhow, Mr. Dew told Dr. Sam to leave and she told him that she intended to work her shifts until the last day of her notice, which she confirmed via email.

55  On December 19, 2010, Dr. Sam showed up for work and worked her shift. However, on December 20, 2010, a man who identified himself as, Mr. Alfredo Rodriguez, from HR Home Office, made a proposal to her stating, "Since it is a hostile work environment, if you agreed not to be compensated or participate in investigation after the 31st of December, we will pay you through the last day of your notice." When Dr. Sam rejects his offer, he got real mad and said, "You are no longer allowed to the premises, and your items will be inventoried."

56  The next day, Dr. Dew angrily stormed the pharmacy, asking where her stuff is, where her stuff is, and started pulling down her photos, wall certificates, and even trashed some of her belongings.

57  The defendant wasted no time as well in cutting off Dr. Sam's insurance benefits, and Dr. Sam's pre-scheduled surgery, dated December 30, 2010, was performed without any insurance coverage. Defendant who had asked her not to return to the premises now chose December 29, 2010, as Dr. Sam's termination date in order to ensure that she did not have any medical coverage on her surgery day of December 30, 2010. Further, Defendants hurriedly conducted exit interview without the required signature as called for by their own policy.

58  During the time Dr. Sam was managing store 3306, she went to another store to deliver rx bags, and the pharmacist in that store told her, "I heard the pharmacy manager position at store 3306 (her store) was open. Dr. Sam told him, no.

59  Defendants, Wal-Mart, in their insidious efforts to cover some of their racial discriminatory practices and disparage treatments against employees, will use other black people within the department to conceal ugly conduct. For example, defendant will plant moles in the store who feed them about what is going on in the pharmacy, but there will be no

safety mechanisms to ensure the veracity of the information received. White store managers, like Ms. Boner, will talk to black employees in a demeaning and humiliating way. Using other blacks to backdoor another black person; especially Dr. Sam, was quite common..

60 Dr. Sam was a victim of orchestrated, racial discrimination and hostile work environment engineered by defendants. The defendants did not do anything to deescalate or remedy the problems she faced on a daily basis. White managers in the company did not face these problems she faced.

## COUNT I: VIOLATION, TITLE VII RACE DISCRIMINATION
### (Applies to all defendants)

61. Dr. Sam repeats, re-alleges and incorporates by reference, all aforementioned paragraphs, specifically the statements collectively in the FACTS section of this complaint, with the same force and effect as herein set forth. Having said this, the Facts section is to be read as a paragraph in Dr. Sam's Count 1.

62. At all material times, Defendant was an employer, covered by and within the meaning of Title V11 of the Civil Rights Act of 1964 (Title V11), as amended.

63. Dr. Sam's race was a factor that made a difference in defendant's decision to subject her to the wrongful and discriminatory treatment described above.

64. Defendants' actions and inactions were intentional, with reckless indifference to Dr. Sam's rights and sensibilities.

65. Dr. Sam was harmed (and continues to be harmed) by defendants' conduct.

66. The Defendants' actions were undertaken intentionally and purposefully with the purpose of denying Dr. Sam equal treatment on the basis of her race.

67. Defendants acted in bad faith and with willful, callous, and wanton disregard for Dr. Sam's federally protected rights.

68. On the basis of Dr. Sam's race, she has been denied equal treatment on the

same basis enjoyed by white Americans in employment environment.

69. Dr. Sam was harmed (and continues to be harmed) by Defendants' conduct. Such harm includes, loss of earning capacity, great and irreparable present and future loss and injury including, but not limited to pain and suffering, humiliation, embarrassment, mental distress, stress and loss of professional reputation.

70. The conduct of the Defendants is/was the proximate cause and substantial factor in causing Dr. Sam's harm.

## COUNT II: VIOLATION, HARASSMENT AND HOSTILE WORK ENVIRONMENT
### (Applies to all defendants)

71. Dr. Sam repeats, re-alleges and incorporates by reference, all aforementioned paragraphs, specifically the statements in the FACTS section of this complaint, with the same force and effect as herein set forth . Having said this, the Facts section is to be read as a paragraph in Dr. Sam's Count II.

72. The discriminatory actions for which Count II concern was carried out by Defendants.

73. In directing and allowing constant confrontations and other hostile incidents occurring without interfering, Defendants created a harassing and hostile work environment in violation of Title VII of the Civil Rights Act of 1964.

74. The Defendants' actions were undertaken intentionally and purposefully with the purpose of denying Dr. Sam equal treatment on the basis of her race.

75. Defendants acted in bad faith and with willful, callous and wanton disregard for Dr. Sam's federally protected rights.

76. On the basis of Dr. Sam race, she has been denied equal treatment on the same basis enjoyed by white Americans in employment environment.

77. Dr. Sam was harmed (and continues to be harmed) by Defendants' conduct.
Such harm includes, defamation, great and irreparable present and future
loss and injury including, but not limited to pain and suffering, humiliation,
embarrassment, mental distress, stress and professional reputation.

78. The conduct of the Defendants is/was the proximate cause and substantial
factor in causing Dr. Sam's harm.

## COUNT III: VIOLATION, 42 U.S.C 1981 (SECTION 1981)
## (Applies to all Defendants)

79. Dr. Sam repeats, re-alleges and incorporates by reference, all
aforementioned

paragraphs, specifically the statements in the FACTS section of this
complaint,

with the same force and effect as if herein set forth. Having said this, the
Facts section is to be read as a paragraph in Dr. Sam's Count III.

80. Dr. Sam is a natural born citizen of the United States as defined by Section
1981.

81. The discriminatory actions for which Count III concern were carried out by
Defendants.

82. As a result of racially discriminatory treatment directed at Dr. Sam because
she is an African American by the Defendants, she is unable to enjoy the full
and equal benefits of all laws on the same basis as Caucasians on
Defendants' property when she is on or off duty.

83. As a result of racial discriminatory treatment by individual defendants,
directed at Dr. Sam because she is an African American, she was subject to terms
and conditions of employment that are different from those afforded by
Defendants to white American employees.

84. Dr. Sam has been denied the enjoyment of all benefits, privileges, terms, and

conditions of the employer-employee relationship afforded to white-American employees of Defendants and that Dr. Sam was and continues to be denied, by the Defendants and their employees, the benefits, privileges, terms, and conditions set forth in the federal law; and, that these benefits, privileges, terms, and conditions are afforded to white-American employees.

85. The Defendants' actions were undertaken intentionally and purposefully with the purpose of denying Dr. Sam equal treatment on the basis of race.

86. The Defendants acted in bad faith and with willful, callous and wanton disregard for Dr. Sam's federally protected rights

87. On the basis of Dr. Sam race (African American), she has been denied the equal enjoyment of the benefits and terms and conditions of a contractual relationship on the same basis as a White American.

88. Dr. Sam was harmed (and continues to be harmed) by the Defendants' conduct. Such harm includes, defamation, great and irreparable present and future loss and injury including, but not limited to pain and suffering, humiliation, embarrassment and mental stress.

89. The conduct of the Defendants is/was the proximate cause and substantial factor in causing Dr. Sam's harm.

### COUNT 1V: VIOLATION, U.S.C Title 29, Section 206(d) (EQUAL PAY ACT)

90 Dr. Sam repeats, re-alleges and incorporates by reference, all aforementioned paragraphs, specifically the statements in the FACTS section of this complaint, with the same force and effect as if herein set forth. Having said this, the Facts section is to be read as a paragraph in Dr. Sam Count V.

91. The discriminatory actions, which Count V relates, were carried out by one of

Defendants' employee.

92.   The disparity in pay against Dr. Sam was degrading and prevented her fully
        performing her duties especially because of the continuing under payment
against Dr. Sam in comparison to her white colleagues.

93.   As a result of the sexual harassment actions directed at Dr. Sam, she was
        subjected to terms and conditions of employment different from other
employees.

94.   The Defendants acted in bad faith and with willful, callous and wanton
disregard for Dr. Sam's federally protected rights.

95.   Dr. Sam was harmed and continues to be harmed by the Defendants
        conduct.  Such harm includes, fringe benefits, great irreparable present and
        future loss and injury including, but not limited to pain and suffering,
        humiliation, embarrassment, mental distress, stress and loss professional
        reputation.

96.   The conduct of the employee of the Defendants was the proximate cause and
a substantial factor in causing Dr. Sam's harm.


## COUNT V: VIOLATION, STATE OF TENNESSEE CIVIL RIGHTS
## ACT
## ( T.C.A. Title 4, Chapter 21)

97.   Dr. Sam repeats, re-alleges and incorporates by reference, all
aforementioned paragraphs, specifically the statements in the FACTS section of
this complaint, with the same force and effect as if herein set forth.  Having said
this, the Facts section is to be read as a paragraph in Dr. Sam Count V.

98.   The discriminatory actions which Count IV relates were carried out by the

Defendants.

99. The discriminatory actions by the Defendants prevented Dr. Sam from
    enjoying full and equal benefits of all laws on the same basis as the other
white pharmacy managers of Wal-Mart, Inc.

100. As a result of the Defendants' discriminatory actions directed at Dr. Sam,
she was subjected to terms and conditions of employment different from those
afforded white-American employees.

101. The Defendants' actions were undertaken intentionally and purposefully
with the purpose of denying Dr. Sam equal treatment on the basis of her race and
gender.

102. The Defendants acted in bad faith and with willful, callous and wanton
disregard for Dr. Sam's state protected rights.

103. Dr. Sam was harmed and continues to be harmed by the Defendants
conduct. Such harm includes, loss of earning capacity, great irreparable present
and future loss and injury including, but not limited to pain and suffering,
physical and emotional anguish, humiliation, embarrassment, loss professional
reputation, and mental distress.

104. The conduct of the Defendants named above is/was the proximate cause
and a substantial factor in causing Dr. Sam harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Dr. Sam respectfully requests that this Court enter a judgment:

(a) declaring that the acts and practices complained of herein are in violations of
Title VII ace discrimination, Title 29 Equal Pay Act, and hostile work
environment, 42 U.S.C. §1981, and State of Tennessee Human Rights Act; and
the State of Tennessee Human Rights Act.

(b) enjoining and permanently restraining these violations;

(c) directing defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful practices are eliminated and to not continue to affect Dr. Sam employment opportunities;

(d) directing Defendants to place Dr. Sam in the position she would be in but for Defendants' discriminatory treatment of her, and to make her whole for all earnings she would have received but for Defendants' discriminatory, harassing, hostile treatment, including, but not limited to, wages, bonuses, pension, interest and other lost benefits;

(e) awarding Dr. Sam compensatory damages for her emotional distress and humiliation;

(f) awarding Dr. Sam punitive damages;

(g) awarding Dr. Sam pre-judgment and post-judgment interest, as well as reasonable attorney's fees and costs of this action;

(h) awarding Dr. Sam damages relating to adverse tax consequences; and

(i) awarding such other and further relief as the Court deems necessary and proper.

## DEMAND FOR A TRIAL BY JURY

Pursuant to 42 U.S.C. §1981A and Rule 38(b) of the Federal Rules of Civil Procedure,

Dr. Sam  demands a trial by jury in this action.

Dated: Nashville, Tennessee
May 24, 2011

Respectfully Submitted,

Lorraine Wade, Esq.
Bar Number #22331
Wade Law Firm
2803 Foster Ave., Suite 104
Nashville, TN 37201
615-915-0289

and

_____

John Ben Iwu, Esq.
John Ben Iwu, PC.
Bar Number #24522
845 Bell Road
Suite 120
Antioch, TN 37013
615-731-5389
Fax: 615-731-5390


## CERTIFICATE OF SERVICE

I hereby certify that a copy of this complaint has been delivered to the defendant, Wal-Mart, Inc., to its Registered Agent at its address below:

The Corporation Company
Wal-Mart Stores, Inc.
124 West Capitol Ave., Suite 1900
Little Rock, AR 72201

and to other defendants at the address below:

Wal-Mart Neighborhood Market
1220 Gallatin Ave.
Nashville, TN 37201

On this ___28th___ day of May, 2011

Lorraine Wade, Esq.: _____

John Ben Iwu, Esq.:_____